## Goodman *et al. v.* Wilson.

### (*Jackson.* April Term, 1914.)

1. **MASTER AND SERVANT.** Negligence of chauffeur. Joint liability.

Where a brother and sister jointly own an automobile, each paying one-half of all expenses, including the wages of the chauffeur jointly employed, and with an .equal right to the use of the machine, with the exception that the brother had a preference in being taken to and from work, the sister is liable for injuries sustained in a collision with a buggy while the chauffeur, alone in the machine, was racing with another machine on his way to take the brother home from work. (*Post, p.* 467.)

2. **MASTER AND SERVANT.** Respondeat superior. Nature of doctrine.

The doctrine of *respondeat superior* applies only when the relation of master and servant is shown to exist between the wrongdoer and the person shown to be charged with the injury resulting from the wrong, and in respect of the very transaction out of which the injury arose. (*Post, p.* 467.)

3. **MASTER AND SERVANT.** Negligence of chauffeur. Liability of ·master.

The mere fact that a driver of an automobile was defendant's servant will not make .defendant liable. unless it is further shown that at the time of the accident the driver was in the master's business, and acting within the scope of his employment. (*Post, p.* 467.)

Cases cited and approved: Brow v. Boston, etc., R. Co.. 157 Mass. 399; Illinois Central R. Co. v. King. 69 Miss., 852.

*As to the liability of the owner for injuries by automobile while being used by a servant or a third person for his own business or pleasure, see notes in 1 L. R. A. (N. S.), 235; 9 L. R. A. (N. S.), 1033; 14 L. R. A. (N. S.), 216; 21 L. R. A. (N. S.), 93; 26 L. R. A. (N. S.), 382; 33 L. R. A. (N. S.), 79; 37 L. R. A. (N. S.), 834; and 47 L. R. A. (N. S.), 662. And as to making *prima facie* case of responsibility for negligence of driver of automobile by proof of defendant's ownership of car or employment of driver, see note in 46 L. R. A. (N. S.) 1091.

Goodman v. Wilson.

4. NEGLIGENCE.   Dangerous instrumentalities.   Automobile.

An automobile is not such a dangerous machine as would require it to be put in the category with the locomotive, dangerous animals, explosives, and the like, so as to render the owner liable from its use.  (*Post, p.* 470.)

Cases cited and approved:  Lotz v. Hanlon, 217 Pa., 339; Steffen. v. McNaughton, 142 Wis., 49; Eichman v. Buchheit, 128 Wis., 385.

FROM SHELBY.

Appeal from Circuit Court, Shelby County.— WALTER MALONE, Judge.

GEORGE HARSH, for appellee.

STEEN & KLEWER and D'. W. DE HAVEN, for defendant Goodman.

MR. JUSTICE LANSDEN delivered the opinion of the Court.

This suit was brought by Wilson against Goodman and his sister, Mrs. Corinne A. Richardson, to recover damages resulting from a collision with a buggy in which Wilson was riding and an automobile owned by Goodman and Mrs. Richardson.  From the verdict and judgment in the circuit court against both defendants, an appeal was taken to, and the judgment of the circuit court was affirmed by, the court of civil appeals. The case is presented to us upon the petition of Mrs. Richardson alone.  The facts which we consider material are that the automobile which collided with defendant in error is owned jointly and equally by Mrs. Richardson and Mr. Goodman, who are brother and sister.  They live in the same residence, and jointly

129 Tenn.—30

employ one chauffeur, and each pays one-half of his wages, and he serves them both in the operation of the automobile. They equally bear the expense of operation and repair of the automobile, and each of them, separately or jointly, may use it accordingly as their needs or pleasures may require. They have an agreement by which Mr. Goodman has a right of preference to the use of the automobile in being carried to and from his office in the morning and afternoon, if he sees proper to require the use of the car at this time, to the exclusion of the right of Mrs. Richardson to use it at these hours. When either party desires to use the automobile, orders would be given by the one so desiring to use it to the chauffeur for this purpose. Occasionally they used it jointly, and occasionally Mrs. Richardson would ride into town after her brother, or would ride to town with him in the morning when he would go to his office.

On the occasion of the accident, the automobile was going into town to the office of Mr. Goodman, and was going west on Union avenue. Wilson was driving west on Union avenue in an open buggy with a horse attached. The automobile approached him from behind. It was racing with another automobile moving in the same direction, and was running at a rate of speed estimated by the witness for plaintiff at from twenty-five to forty miles an hour. When Wilson saw the two automobiles approaching him he drew his horse and buggy close to the curb, and, as he did so, the automobile in front of that of plaintiff in error passed Wilson,

and plaintiff in error's automobile appeared to be trying to get in between the other automobile and Wilson's buggy. In this attempt, the automobile struck the wheel of the buggy, and knocked Wilson into the air; and he fell onto the asphalt pavement. The automobile ran ninety yards after striking the buggy, before it was stopped.

Upon these facts, it is insisted for Mrs. Richardson that she is not liable, because the evidence does not connect her with the accident, and that the chauffeur, at the time of the accident, was in the service of Mr. Goodman only, and therefore the rule of *respondeat superior* does not apply as between the chauffeur and Mrs. Richardson.

The court of civil appeals was of opinion that, although Mrs. Richardson was not in the automobile at the time, and may not have given orders to the chauffeur to proceed on the journey, still the chauffeur and the automobile at the time of the accident were on the business of the joint owners of the automobile.

It is undoubtedly true, as a general proposition of law, that the doctrine of *respondeat superior* applies only when the relation of master and servant is shown to exist between the wrongdoer and the person sought to be charged with the injury resulting from the wrong at the time and in respect of the very transaction out of which the injury arose, and the mere fact that the driver of the automobile was the defendants' servant will not make the defendant liable. It must be further

shown that at the time of the accident the driver was on the master's business, and acting within the scope of his employment. This rule was said by Blackstone to be founded on the superintendence and control which the master is supposed to exercise over his servant. 1 Bl. Com. 431.

The rule arises out of the relation of superior and subordinate, and is applicable to that relation wherever it exists, and is coextensive with the relationship itself. It is founded on the power of control which the superior has a right to exercise, and which, for the safety of other persons, he is bound to exercise, over the acts of his subordinates, and in strict analogy to liability *ex contractu* upon the maxim, *"Qui facit per alium facit per se."* *Clark* v. *Fry,* 8 Ohio St., 358, 72 Am. Dec. 590. This rule is not modified by the existence of the fact that the negligent servant is jointly employed by two or more persons. For instance, in the case of a flagman at a railroad crossing jointly employed by two or more railroads, the road in whose service he is negligent, or otherwise commits a tort, is liable for his misconduct. *Brow* v. *Boston, etc., R. R. Co.,* 157 Mass., 399, 32 N. E. 362; *Illinois Central R. R. Co.* v. *King,* 69 Miss., 852, 13 South. 824.

It is said in 26 Cyc., p. 1525, that: "Where a servant is generally employed by several persons who are not partners, each contributing to his wages, one of the masters is not liable for the misconduct of the servant while engaged solely in the service of another master."

Goodman v. Wilson.

For the text a case is cited from a circuit court in Ohio. From a note to the text, it appears that the case cited was where three persons hired a coachman and divided his wages, and the carriage belonged to one, and the horse to another, and a person was injured by the negligence of the coachman while driving one of his employers. It was held that the latter employer alone was liable for the injuries. Upon such a meager report of the case upon which the text is founded, we cannot determine its soundness. Upon principle, it would seem that if two or more persons, as the case under consideration, purchase an automobile in partnership and employ a driver, whose duty it is to drive the vehicle for the joint and separate use of the partnership, that both owners would be liable for injuries resulting from the negligence of the driver, whether they were both using the automobile at the time or not. In fact, neither owner was occupying the car at the time of this accident. It had left the residence of Mrs. Richardson, and was on its way to the office of Mr. Goodman for the purpose of conveying him to the residence of Mrs. Richardson, and it is conceded that this was one of the purposes for which the automobile was owned and operated by them. While it is entirely true that the driver and the automobile were going for Mr. Goodman, it is none the less true that the driver was doing the thing for which he was jointly employed, and the machine was being used for one of the purposes for which it was jointly owned. The machine is partnership property, and the driver was in the service of

the partnership. There is no separateness of time at which the driver may serve, or of interest in the automobile, so that it could be said that the machine belonged exclusively to one, or the driver was exclusively in his service. The case might be different if the understanding between Mrs. Richardson and Mr. Goodman had been that at certain hours of the day one should have the exclusive use of the machine and the driver. But the proof is that each one has an equal right to the use of the machine and the services of the driver, with the slight exception stated heretofore.

Under the partnership arrangement, Mrs. Richardson could have directed the driver, when leaving for Mr. Goodman, to speed the car and return to her within a given time, and this shows that, as joint employer, she had control of the servant at the time of the accident.

We have examined *Lotz* v. *Hanlon,* 217 Pa., 339, 66 Atl., 525, 10 L. R. A. (N. S.), 202, 118 Am. St. Rep., 922, 10 Ann. Cas., 731; *Steffen* v. *McNaughton,* 142 Wis., 49, 124 N. W., 1016, 26 L. R. A. (N. S.), 382, 19 Ann. Cas., 1227; *Eichman* v. *Buchheit,* 128 Wis., 385, 107 N. W., 325, 8 Ann. Cas., 435. These cases and the annotator's notes indicate that the weight of authority is that an automobile is not a dangerous instrument, so as to be classed with locomotive engines, dangerous animals, explosives, and the like, and also that the liability of the owner of an automobile for acts or omissions of his chauffeur in handling the machine depends upon whether, at the time of the act or omission complained

Goodman v. Wilson.

of, the chauffeur was acting within the scope of his employment; that the relationship between owner and chauffeur is not different from that existing between master and servant generally, and is governed by the same general rules of law which govern the relationship of master and servant. The cases referred to do not disclose the existence of any statutory regulation of the subject in the States in which they were decided, and the notes to those cases indicate that the authorities cited are speaking with reference to the general subject of master and servant, and proceeding upon the idea that an automobile is not a dangerous instrument, and falls within the general rule stated. In this case it is not necessary for us to say what effect chapter 173, Acts of 1905, would have upon the general rule, or whether this enactment of the legislature was intended to place the automobile in the category of dangerous instruments.

We believe the judgment of the court of civil appeals should be affirmed, for the reason stated, and that is that the driver and the automobile were employed directly in the execution of the purposes of the joint ownership of the automobile and the joint employment of the driver. It was a partnership arrangement, and not a separate interest which each had in the automobile and in the service of the driver.